USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/19/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARMAN WILLIAMS,

                Plaintiff,

-against-

NYC BOARD OF ELECTIONS, et al.,

                Defendants.

**DISCOVERY ORDER**

**23-CV-5460 (AS) (KHP)**

**KATHARINE H. PARKER, United States Magistrate Judge.**

    Presently before the Court are several discovery motions and issues raised by Plaintiff Carman Williams. The Court addresses these discovery issues below.

**MOTION TO COMPEL**

    On June 20, 2024, the Court issued a discovery Order stating that to the extent there were specific interrogatories Plaintiff served on Defendants that did not involve topics the Court already ruled on in its May 13, 2024 Order, Plaintiff could file a motion by July 3, 2024 to compel responses. (ECF No. 104.) On July 4, 2024, Plaintiff filed a letter seeking an extension on the deadline to file the motion to compel, which the Court granted even though it was late. In granting that request, the Court reiterated that Plaintiff's motion should not involve interrogatories concerning topics/requests that the Court already ruled on in its May 13, 2024 Order. (ECF No. 118.)

    On July 17, 2024, Plaintiff filed a motion to compel discovery responses to interrogatories and document requests directed to individual Defendant Hemalee Patel, who is also the New York City Board of Elections' General Counsel (the "Motion"). (ECF No. 130.) Plaintiff asserts that she served Ms. Patel with interrogatories and document requests on April

24, 2024, (the "April 24 Interrogatories and Requests") but Defendants never responded. In addition to seeking responses to her requests, Plaintiff also seeks the sanction of her costs in having to move to compel Defendants for failing to provide responses, and an order precluding Defendants from objecting to the interrogatories and document requests served on Patel. On August 6, 2024, Defendants responded to the Motion asserting that they believed they did not need to respond to the April 24 Interrogatories and Requests because they are duplicative of prior requests the Court had ruled on. (ECF No. 149.)

Rule 37(a) permits a party to move for an order compelling disclosure or discovery and must be accompanied by a certification that the movant has in good faith attempted to confer with the other party in an effort to obtain the discovery without resort to a motion. Fed. R. Civ. P. 37(a)(1). The Rule can be invoked for failure to answer deposition questions, answer interrogatories, produce documents, provide initial disclosures and also for evasive or incomplete disclosures or production. Fed. R. Civ. P. 37(a)(3-4). It also provides for imposition of sanctions for discovery misconduct. *See generally Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).

If a Rule 37(a) motion is denied, the Court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant to pay the party who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees, unless the motion was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B). This aspect of the rule discourages filing of frivolous or unwarranted motions. If a Rule 37(a) motion is granted, the court similarly must order the party whose conduct necessitated the motion to pay the

movant's reasonable expenses incurred in bringing the motion, including attorney's fees, unless the movant filed the motion without first conferring in good faith to resolve the matter, the opposing party's nondisclosure, response or objection was substantially justified, or other circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A).  This aspect of the rule similarly encourages compliance with discovery rules and cooperation of the parties.

The party who moves to compel has the burden of demonstrating the discovery it seeks is relevant to the claims and defenses in the action.  *See Go New York Tours, Inc. v. Aurora Tourism Services, LLC*, No. 22-cv-10633 (DEH) (JW), 2023 WL 9111158, at *1 (S.D.N.Y. Dec. 20, 2023) (citing *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010)); *see also* Fed. R. Civ. P. 26(b)(1)( "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"). However, even if the discovery sought is relevant, the court may limit discovery if, among other things, the discovery sought is unreasonably cumulative or duplicative.  Fed. R. Civ. P. 26(b)(2)(C).  Finally, Magistrate Judges are afforded "broad discretion" with regard to managing discovery, which includes limiting discovery to ensure that it is proportional to the needs of the case.  *Sali v. Zwanger & Pesiri Radiology Grp., LLP*, No. 2:19-CV-00275-FB-CLP, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022); Fed. R. Civ. P. 1, 26(b)(2).

Plaintiff's April 24, 2024 Interrogatories and Requests contain the following questions and requests:

1. Do you have any first-hand personal knowledge of Plaintiff's work performance and/or conduct?
2. If so, where and when did you personally observe Plaintiff's work performance and/or conduct?

3. Name the individuals and provide their job titles who were the source of the hearsay statements included in your Narrative Response to the NYSDHR Complaint No. 10217709.
4. Provide the means by which the information was conveyed to you by the parties named in #3 and produce copies of the materials provided to you.
5. Are those individuals still employed by the Board of Elections? If not, when and under what circumstances did they leave BOE?
6. By whom are coordinator journals reviewed and what is the procedure for logging and/or investigating any alleged issues raise vis-à-vis Poll Workers?
7. Was the Plaintiff ever subjected to any disciplinary action by the Board from the start of her employment with BOE in 2008 through May 31, 2022? Produce any documents that indicate Plaintiff was disciplined and/or reprimanded during that time frame.
8. Did you receive a copy of the May 31, 2022 email Plaintiff sent to Debra Leible regarding Donna Ellaby? Produce the document in ESI form with meta-deta.
9. Did you forward the email to any other BOE employees including BOE Commissioners? Produce copies – hard and electronic – of any emails forwarded by you.
10. Are Freedom of Information Law Requests legal under NYS Law?
11. What expertise do you have with regard to ascertaining a person's motives for seeking materials under the NYS Freedom of Information Law?
12. Have you ever been the subject of a discrimination complaint at any previous job or in connection with your current position? Produce copies of documents – hard copies and electronic – of any such complaints.
13. When and where did you ever have a conversation with Plaintiff regarding her "motives" for requesting FOIL documents?
14. Did you receive any training in "implicit bias" and "racism" by the Board of Elections?
15. Does the Board of Elections conduct any such training?
16. Have you drafted any other Narrative Responses or Position Statements to any administrative agencies in connection with racial discrimination and/or retaliations complaints? Produce copies – hard and electronic – of any such documents.
17. Do you utilize any laptops or smartphones in connection with your job at the BOE?
18. Who is your cellphone provider and what is your phone number?
19. How many Poll Workers are currently active with BOE?
20. Do you use your personal email to send and/or receive email from the Board of Elections?
21. Were you aware when you filed the Narrative Response that Plaintiff had been assigned on two prior occasions to work Early Voting?
22. Were you aware of the Plaintiff's educational background when you made the accusations in your Narrative Statement response to the NYSDHR?
23. How often are Poll Workers evaluated by BOE and/or its agents/employees?
24. How many times has BOE conducted performance reviews of Plaintiff's work performance from 2008 through December 31, 2022? Produce copies – hard copies and ESI with metadata intact – of any such "reviews" and/or "evaluations."
25. What are the criteria for Poll Worker "evaluations"?  Produce copies of the standardized criteria (hard copies and electronic copies)?

The Honorable Arun Subramanian, the District Judge in this case, recently dismissed Plaintiff's libel claim against Hemalee Patel.  (ECF No. 151).  Many of Plaintiff's interrogatories appear to be related to that claim, as they are focused on statements made by Patel to the New York State Division of Human Rights in response to Plaintiff's administrative charge of discrimination filed with that agency.  Thus, to the extent they were relevant to that claim, they no longer are relevant and need not be responded to.  Further, to the extent Plaintiff seeks communications Patel had with witnesses to prepare a legal response to Plaintiff's administrative charge, those communications would be protected by the work product doctrine.  *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent[.]"); *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 73 (S.D.N.Y. 2010) (observing that work product encompasses "an attorney's 'interviews, statements, memoranda, correspondence, briefs, [and] mental impressions'" and "factual material, including the result of a factual investigation[.]") (internal citations omitted).  Some of the questions are simply improper because they seek legal rather than factual information.  The Court also notes that Plaintiff has already received all documents and communications relating to her performance, the site coordinator manual and any training materials received by coordinators in 2022, to the extent such training materials exist, as well as the Employee Handbook applicable to BOE employees in 2022 and, thus, some of the questions are redundant of other requests that this Court has already ruled on.  Finally, Plaintiff provides no explanation as to why the specific

interrogatories/requests are relevant to her remaining claims and proportional to the needs of the case given the discovery already provided. Accordingly, the Court rules as follows:

The following requests in the April 24 Interrogatories and Requests seek information that is either duplicative of information Plaintiff has already received or duplicative of requests the Court has already ruled on in its May 13, 2024 Order, and therefore, Defendants are not required to respond: 7, 8, 15, and 24.

The following requests seek irrelevant information and are disproportionate to the needs of the case, and therefore, Defendants are not required to respond: 5, 9, 11, 12, 13, 14, 17, 18, 19, and 20.

Request 10 seeks a legal conclusion, which is improper, and therefore, Defendants need not respond.

Requests 3-4, 16, and 21-22, relate to Plaintiff's libel claim against Hemalee Patel, which was recently dismissed by Judge Subramanian (ECF No. 151), and therefore, such requests seek irrelevant information that do not require a response from Defendants.

Although Plaintiff has not sufficiently explained why the remaining Requests are relevant, the Court is familiar with the claims and in an abundance of solicitude to Plaintiff, because she is proceeding pro se, will grant her limited additional discovery. Requests 1, 2, and 6 are contention interrogatories that seek relevant information about Plaintiff's performance and explanations concerning certain documents already produced that are discrete and not redundant and thus proportional to the needs of the case. Additionally, although requests 23 and 25 are duplicative of prior document requests, Plaintiff styled these requests as contention interrogatories and has not received sworn interrogatory responses. Further, they are relevant

to Plaintiff's performance. Although the contention interrogatories arguably were not consistent with Local Rule 33.3 when served, discovery is now complete but for the issues addressed herein and at this stage in the litigation, the Court finds that it is appropriate to require Defendants to answer five contention interrogatories to close out all remaining issues.

Accordingly, Plaintiff's motion to compel is GRANTED as to requests 1, 2, 6, 23 and 25 insofar as the Court will permit them as contention interrogatories and require Defendants to provide sworn responses to them. To the extent that Defendants have already produced documents that respond to these requests, Defendants need only refer Plaintiff to the responsive document(s). Defendants' responses are due September 12, 2024.

Because Plaintiff's motion was largely denied, the Court finds that sanctions, including in the form of costs, are inappropriate here and therefore does not award any.

**LETTERS REGARDING ESI**

On July 30, 2024, Plaintiff filed a letter seeking additional discovery due to Defendants' failure to disclose and/or supplement electronically stored information ("ESI") and specifically requests emails from or to other email addresses allegedly used by Defendants that end in @evote.nyc. (ECF No. 144.) In that letter, Plaintiff also asserts that Defendants did not provide her with a "redaction log," but Plaintiff then attaches a privilege log provided by Defendants as an exhibit.[1] Plaintiff also states that Defendants have not searched "back up tapes" for deleted emails and have not searched the ESI of an individual named Bryan Cambrelen. On August 1, 2024, Plaintiff filed a motion for sanctions due to Defendants' failure to disclose ESI. (ECF No.

---

[1] Plaintiff asserts that the emails Defendants redacted relate to Plaintiff's Freedom of Information Law ("FOIL") requests that she filed with the Board of Elections in 2022, and that such emails should not be redacted. Based on Defendants' privilege log, it appears the emails concerned legal advice related to the FOIL requests, and would therefore be protected by the attorney-client privilege.

147.) On August 9 and 11, 2024, Plaintiff filed further letters raising the same arguments mentioned in her July 30th and August 1st letters, and also stating that she intends to take depositions. (ECF Nos. 152-53.)

The Court has already ruled on Plaintiff's requests for ESI multiples times. (*See e.g.*, ECF Nos. 104, 137.) For this reason, the Court construes Plaintiff's letters asserting that sufficient ESI has not been produced as motions for reconsideration.

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal citation omitted). Local Civil Rule 6.3, which governs reconsideration, aims to "prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *SEC v. Ashbury Capital Partners, L.P.*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting *Carolco Pictures, Inc. v. Sirota,* 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). Courts must "narrowly construe and strictly apply Local Rule 6.3, so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment*." Schoolcraft v. City of New York*, 298 F.R.D. 134, 137 (S.D.N.Y. 2014). The Second Circuit has held that the standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." S*hrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is appropriate where the moving party demonstrates "an intervening change of controlling law, the availability of new evidence, or the need to

correct a clear error or prevent manifest injustice." *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007). A motion for reconsideration should be denied "where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Here, Plaintiff has not pointed to controlling decisions or new evidence that the Court overlooked in rendering its prior orders. Plaintiff also has not identified any clear error. Rather, Plaintiff has simply asserted that Defendants have not provided "ESI" in this action. Plaintiff has received responsive emails (which are ESI) in hard copy form that provide her with all relevant information including author, recipient, cc's and bcc's (if any).[2] Yet, Plaintiff continues to file numerous letters requesting metadata, never stating what specific metadata elements she seeks or what relevant information that she believes will be gleaned from the metadata of responsive emails. Defendants have represented that Plaintiff has received all BOE communications and documents that relate to her work performance and, therefore, Plaintiff's assertion that Defendants may also use other email addresses is irrelevant. The Court also notes that the scorched-earth approach to discovery taken by Plaintiff is inconsistent with Rule 1. Accordingly, Plaintiff's motions for reconsideration concerning the production of additional ESI/metadata are DENIED.

As to Plaintiff's assertion that Defendants have not searched "backup tapes," the Court first notes that Plaintiff relies on *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003), a case from over 20 years ago, when completely different methods were used to store emails. Further, in *Zubulake*, there was evidence that responsive, relevant emails had been deleted.

---

[2] In a letter dated July 24, 2024, Defendants confirmed that their search of ESI found that no emails contained BCC lines and therefore there were no emails to reproduce in electronic format. (ECF No. 136.)

*See Zubulake*, 220 F.R.D. at 215. Thus, *Zubulake* involved a dispute over whether the defendant had to look for deleted emails in backup archives. Here, there is no evidence presented to suggest Defendants have deleted or not retained relevant emails. Thus, Plaintiff's request for search of backup tapes is again DENIED. The Court will not entertain further motions concerning ESI.

Plaintiff also asserts that Defendants have not searched the ESI of Bryan Cambrelen, who was listed in Defendants' Federal Rule of Civil Procedure 26 initial disclosures. Insofar as Cambrelen was listed by Defendants as a person having relevant information, Defendants should have searched for relevant documents from him. Defendants have not responded to Plaintiff's assertion about Cambrelen and the Court assumes his emails and texts were not searched because his name was not among the custodians Defendants previously provided to the Court as people whose ESI was searched. To the extent that Mr. Cambrelen's emails and, if applicable, text messages were not searched, Defendants are directed to search them with Plaintiff's name and correct poll worker number (221539) and produce any responsive documents by September 12, 2024. By the same date, Defendants shall file a letter with the Court confirming Defendants have complied with this Order.

**AUGUST 2, 2024 LETTER**

On August 2, 2024, Plaintiff filed another letter raising the same arguments discussed above and also complaining that Defendants produced to Plaintiff "multiple emails on each page[.]" (ECF No. 148.) Plaintiff has not described with specificity what the deficiencies are with Defendants' production and how such deficiencies impede Plaintiff's ability to understand the information contained in the emails. While Plaintiff is correct that parties should produce

documents in the manner in which such documents are ordinarily kept, it is routine for parties to produce an entire chain of an email on the same page or pages, showing an email, the response thereto, and further responses.  Since Plaintiff did not include exhibits, the Court is unable to discern from Plaintiff's letter whether Defendants simply produced email chains, which would not be improper, or included unrelated emails on the same page, and whether the issue Plaintiff raises is one of form rather than substance.  While Plaintiff states she attempted to bring this topic to defense counsel's attention, it is unclear to the Court whether the parties have actually met and conferred on this issue.  This is a matter that can easily be resolved and should not require Court intervention.  The important thing is that Plaintiff has relevant, legible documents that she can use to prosecute her case.  Accordingly, the parties shall meet and confer on this issue.  Accordingly, Plaintiff's request that Defendants produce each email individually is DENIED.

Plaintiff also asserts in the August 2, 2024 letter that Defendants never indicated whether they searched the ESI of Donna Ellaby.  This is incorrect.  On July 5, 2024, Defendants filed a letter confirming that Donna Ellaby's ESI was searched in response to the Court's May 13, 2024 Order and that Defendants mistakenly did not list Ms. Ellaby's name in the list of custodians that were searched.  (ECF No. 115.)

**REQUEST TO REOPEN DISCOVERY**

In the letters dated August 2, 2024 and August 11, 2024, Plaintiff requests that the discovery deadline be extended and states her desire to notice depositions.  (ECF Nos. 148, 153.)  On August 6, 2024, Defendants filed a letter requesting that discovery be re-closed and that the parties be permitted to proceed to summary judgment motion practice.  (ECF No. 149.)

To be clear, discovery closed on May 31, 2024, but was later reopened for the limited purposes of Defendants reproducing emails that contained a bcc line (of which there were ultimately none), and Plaintiff filing a motion to compel concerning particular interrogatories (as described above). (*See* ECF Nos. 99, 104.)  Thus, the Court construes Plaintiff's letter seeking an extension of the discovery deadline to be a motion to reopen discovery for other purposes, including depositions.

"A district court has wide latitude to determine the scope of discovery." *In re Agent Orange Prod. Liability Litig.*, 517 F.3d 76, 103 (2d Cir. 2008).  District courts may limit discovery if, among other reasons, they determine certain discovery sought is unreasonably cumulative or duplicative, if the party seeking discovery already had ample opportunity to obtain the information sought, if the discovery is disproportional to the case, or if the burden or expense of the discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1-2). Importantly, under Rule 16(b), district courts are required to enter scheduling orders "that limit the parties' time to complete discovery." *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05 Civ. 8936(RJS), 2007 WL 3275918, at *1 (S.D.N.Y. Nov. 5, 2007).  Reopening discovery after the discovery period has closed requires a showing of good cause. *Eng–Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ)(KNF), 2008 WL 4104015, at *1 (S.D.N.Y. Aug. 28, 2008).

Here, Plaintiff has not provided good cause for reopening discovery, nor does she explain why she did not notice depositions before discovery closed.  Therefore, Plaintiff fails to meet the standard for reopening discovery.  Accordingly, Plaintiff's request to reopen discovery is DENIED and Defendants' request to close discovery is GRANTED, except for the purpose of Defendants complying with this Order.  Plaintiff will not be permitted to depose individuals

months after discovery has closed. This Order is without prejudice to Plaintiff subpoenaing trial witnesses of her choice.

The Court also notes that Plaintiff has filed numerous letters requesting discovery she has already sought and received, while reasserting the same arguments over and over again. Such duplicative filings waste judicial resources and cause undue burden and expense on the parties that have to respond. Accordingly, any further discovery motions will be summarily denied if they raise issues previously decided.

## CONCLUSION

By **September 12, 2024**, Defendants shall provide Plaintiff with answers to interrogatories 1, 2, 6, 23 and 25 from Plaintiff's April 24, 2024 Interrogatories and Requests. By that same date, Defendants shall also search Bryan Cambrelen's ESI with Plaintiff's name and poll worker number (221539) and provide Plaintiff with responsive documents from such search, if any, and file a letter with the Court confirming Defendants have complied with this Order.

The parties are directed to comply with Judge Subramanian's individual rules as to summary judgment motion practice, which can be found at https://www.nysd.uscourts.gov/sites/default/files/practice_documents/AS%20Subramanian%20Civil%20Individual%20Practices_0.pdf. The summary judgment briefing schedule is as follows: Defendants' motion for summary judgment: **October 18, 2024**

Plaintiff's opposition to motion: **November 15, 2024**

Defendants' reply to motion: **December 2, 2024**

**The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 130 and 149, and mail a copy of this Order to Plaintiff.**

**SO ORDERED.**

Dated: August 19, 2024
      New York, New York

*Katharine H. Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge